of the day, Paz v. Portfolio Recovery Associates. Hearing first from Mr. Casalo. May it please the Court, my name is Mario Casalo, appearing on behalf of Appellant Isaac Paz. Your Honors, this is an appeal from the District Court decision in the case where the Court refused to award any and all attorney fees and costs incurred by Mr. Paz after the date of service upon which defendants served an offer of judgment that cut off fees and costs at acceptance and disclaimed liability and that plaintiff incurred any damages. Specifically, the District Court compared plaintiff's judgment after trial for maximum statutory damages of $1,000 under the FDCPA and liability for violating the Fair Credit Reporting Act to defendant's offer of $3,501 plus fees and costs incurred to acceptance of the offer and concluded that because $3,501 is more than $1,000 and defendant's offer of judgment would have awarded fees and costs, defendant's offer therefore bested plaintiff's recovery at trial. The District Court's decision was an error for the following reasons. First of all, the Court falsely concluded that the offer of judgment offered full relief. Specifically, despite the limitation in the offer and that offer reads that judgment shall be entered against defendant for reasonable attorney fees and costs through the date of plaintiff's acceptance of the offer in an amount to be agreed upon between the parties and if no payment is made. Despite that limitation, in the Court's view, the offer of judgment offered full relief, full statutory relief. But that was an error. Under the case law of this circuit, a court does not have the discretion to alter the party's agreement. The party's agreement, had the offer been accepted, would have been quite simply that attorney fees and costs would only have been awarded to the date of acceptance. That is not complete statutory relief. And the Court held that it was. Ultimately, the Court falsely concluded that the language of the OOJ would require all reasonable fees to be awarded when this wasn't the case. Plaintiff would thus be responsible to pay attorney fees and costs incurred post acceptance of the offer of judgment, which means that full relief was not offered by a long shot. Moreover, full relief was not offered for the reason that the defendant's offer of judgment disclaimed liability, evidencing defendant's intent that the settlement not be in the merits, but rather be made to avoid protracted litigation. The offers always include that, right? We're not admitting any liability, but if it's accepted, it's a judgment in favor of the plaintiff, correct? It's considered a settlement, Your Honor. It's a judgment. So ultimately, Paz was reasonable in rejecting the offer of judgment. Mr. Casale, when the case went to trial after summary judgment, there's one thing I'm not 100% sure on. And that is, did the District Court determine at summary judgment that the defendant's claims were resolved on summary judgment, but as to the remaining claims? In other words, at the trial, were punitive damages on or off the table? They were off the table. Okay. And so you went to trial, you were going to recover actual damages under the two statutes, and the actual damages were based on that $20,000, $21,000 of, was it all emotional distress? It was, Your Honor. So there were no... There were statutory damages, obviously, under the Fair Declaration of Practices Act, plus actual damages. He or she got that, right? You won the statutory damage. Yes. Statutory damages were recovered in the maximum amount of $1,000, and liability was established under the Fair Credit Reporting Act. So you went to trial, and if all would have worked out, you would have recovered the $1,000, which you did, plus the $21,000, but you would not have been able to get any punitives. That's right. That's right. $21,000 or more, depending on if the jury... Well, you didn't seek any more. We didn't seek any more. It's true, Your Honor. That's what we saw. It was $21,000 in actual damages. The jury obviously could have awarded more or less, as it did. But you spent $177,000 more than the $10,800-ish you had spent up before the Rule 68 Offer of Judgment to collect that. Yes, Your Honor. And that's basically because the plaintiff had no choice. Plaintiff's attorney fees and costs were cut off, and he would ultimately be responsible for any further fees and costs incurred after the date of acceptance. But that's what I don't understand. Why couldn't you have... There's nothing that prevented you. Maybe that's the better way of asking it. There's nothing that prevented you from accepting that second offer, as you did the first one, the one from January of 2015. You could have. You chose not to, but you could have. Certainly. But that would have waived the full statutory entitlement. In other words, that offer was accepted previously, and ultimately, as a result, Portfolio kept on collecting for seven years, and you fool me twice, shame on me. The plaintiff did not want to accept the second offer as he accepted the first one, because they didn't even follow. They didn't abide by the first offer. So he made that choice. He went to trial seeking the $22,000, and it just didn't work. Well, he got maximum statutory damages, and he got those damages without any temporal cutoff as to attorney fees and costs. Even though there was a temporal cutoff as to the fees and costs offered by the last offer. Ultimately... The district judge and magistrate judge took into account a lot of different factors, which ordinarily are pretty relevant for fee awards. What's your evidence to argue that the district judge or district court overemphasized the rejection of the offer? Well, the offer shouldn't have been considered in the first place, and that is because it didn't... At all. At all. Because Section 6092K of the FDCPA requires that all reasonable attorney fees and costs be awarded, not just those incurred up to a certain arbitrary date. It's not exactly arbitrary, but this is your fees on fees point? Yes, Your Honor. Is there anything else to that? It's just the fees on fees, yes. Any costs, obviously. We have an opinion in the Moriarty case that says you absolutely should consider the offers. If it's a substantial offer, Your Honor. But in Moriarty, we didn't have the issue of attorney fees and costs being cut off. In other words, there was an apples and apples comparison. Damages were compared to damages. And that's not what we have here. What we have is attorney fees and costs being cut off that aren't even being considered. So that in the court's view, they basically, in their words, did simple math. They took $1,000 and they compared it to 3501 without even considering that the 3501 cut off substantial attorney fees, potentially, that could not be calculated by the plaintiff at any time. I mean, you could have said you turned down like 25, right, on the eve of trial? Yes, Your Honor. We did, but the point is the plaintiff could not have known what future fees would have been incurred. And had that offer been accepted, the plaintiff would not be reimbursed for the fee petition, reviewing a response, reviewing a reply, any post-judgment collection work that would have to be done, any appeal. None of that would be compensable to the plaintiff. The plaintiff's attorney would either find an attorney that worked for free, or he'd have to be responsible for those fees. And that's not what's contemplated by the FDCPA. The FDCPA says that all reasonable fees and costs are to be awarded. And that's supported by the case law in this circuit regarding fees on fees. Fees on fees are compensable. Yes, the plaintiff could have accepted less, but he shouldn't be punished for accepting less than his statutory entitlement. And that's exactly what happened here. Again, with respect to Moriarty, ultimately, applying the district court's reasoning, an offer of judgment for, let's say, $1,001 would have been found to have bested, $1,001 with no attorney fees and costs, would have been found to have bested a recovery after trial of $1,000 because the court didn't even consider attorney fees and costs. And of course, that's an absurd result given the fee-shifting provision, the mandatory fee-shifting provision under the FDCPA section 1692K. Further, ultimately, a substantial offer cannot be one which forces a consumer to waive attorney fees and costs to which he is absolutely entitled. And ultimately, in this case, there's no way a plaintiff could have predicted the extent to which attorney fees and costs would be incurred. Moreover, the court's 95% reduction in attorney fees from what is sought could not properly be based on the fact that Paz didn't obtain actual damages or that he obtained less than he sought. The court in Enoch v. Tiener reversed the district court's reduction of the fee award by one-third based on the plaintiff's recovery of $635,000 of the $10 million sought. And the court. Thank you, counsel. We'll next hear from the defense, Mr. Schultz. Please, the court. David Schultz for the Appellee. First, I want to just address a couple of facts that came up. There were actually three offers of judgment. The first one was $4,000 plus fees. A month later, it was $2,500 plus fees. A month later, in March, it was $3,500 plus fees. But then on the EVA trial, there was a $25,000. And then before trial, there was a $25,000 offer. None of those were accepted. There was no negotiations in connection with that. More importantly, I think, what he just described did not happen. That is not how the trial judges decided this case. They did not say this case was cut off by the fees. Magistrate Judge Valdez decided the case first, important recommendation, which is adopted by Judge Alonzo. They've seen lots of Fair Debt cases. She said specifically, and we did not argue that the offer cut it off. We did not argue that. She said, Rule 68 did not cut off the fees, if no better result. Instead, what she says on page 9 of her opinion, and repeats it on page 11, is that the Rule 68 offer or offers were simply probative of whether the fees requested was reasonable. And then she, as Judge Alonzo did, went through the factors. They went through the lodestar analysis. They made many comments about the fees, none of which were really raised here, and I'm not going to go through all of them, for reasons why it would get reduced. But then they looked at the discretionary factors that the Supreme Court and this Court has laid out. And those factors were discussed at length. And what were those factors? Complexity of the case, that's what she talked a lot about. So Mr. Schultz, let me ask you specifically about the focus on the size of the trial team and the folks that the plaintiff brought in. What was the size of the defense trial team? I did the trial. I had an associate who worked for that client help me. I did jury instructions, motions, voir dire, opening, closing, plaintiff, and I presented the transgene representative. My associate presented the client, which was two witnesses. I also had another, a newer associate, former federal clerk, who came over and she helped. So at least two? It was basically me and my associate, but yeah, there was a little person there. They brought in a trial team before trial. Two lawyers I went to law school with, a paralegal. They were charged for this trial. And this is relevant to the fact that I was just talking about complexity. They had $1,400 an hour or more at that table. And this was a case with less than two day trial. And that's what the judge talked about. $1,400 more at that table than at your table? No, I was probably close to the $800 probably. But like I said, the third person really didn't do much. They were there to help a little bit, but I was pretty much front end. I've tried a number of these cases. But then the court talked about the most important factor. And that's what the judges did. And that's what you're asked to look at as well. Success. What was the result? And the court went through. They brought eight claims. They lost just about every one of them. There was an EIA. Can I ask you, Mr. Schultz, can I ask you to address the plaintiff's nightmare scenario basically of the Rule 68 offer that is made and accepted and there's no follow through. Obviously they've got the history in this case. But let's even assume bad faith in that process. What do you think the answer should be to those concerns? First, I'd point out that the Rule 68 was not the basis for the rulings that are being reviewed. Second, the Rule 68, that bad case scenario, you're saying if the judge had said that, that the Rule 68 cut it off, which the court didn't say. If the offer had been accepted. Right. We would have paid the fees. What did I say? We said in the offer it was reasonable fees through acceptance as disagreed by the parties or decided by the court through. But Judge Nelson's asking you what if it was a bad actor. I don't think he's accusing you and your client of being a bad actor. First, we have a history of not doing that. That's a problem for you. Right. But let's assume worse. Deliberate delaying tactic. No court has said that language would have cut it off. It wouldn't have cut it off. When I say through, it's like if you tell your player to run through first base, you don't stop at first base. If you tell the kicker to kick it through the end zone, it doesn't stop at the end zone. You're going through a looking glass. When we said through, through negotiation or decision by the court. I was not taking a position. I've never taken a position. Nor has any other court said it. There are some offers of judgment in the Seventh Circuit that talked about an offer that said up into the date of acceptance. It didn't say that. But anyhow, your worst case scenario, I suppose somebody could have tried to spin that language in a nefarious way. I didn't. I never have. There's been many offers, and they're all on a record. They're accepted. Negotiate. They're fair. You've seen this. We see you all the time. Yes, I know this is your field as well. He's filed close to 400 of these in eight years. You know the history of those cases. Judge, they're gone in 60 to 90, 120 days. Most of them, four to five of them. It's because the parties all know each other. The judge knows it. Part of the response, I've got to say, I'm not sure that I read through necessarily the way you do. Ambiguity is a problem with Rule 68, as you know. Let me ask you if I could about also just one feature of our case law. I read our opinion in Fletcher about this disclaimer of liability language as rejecting the rationale of Fisher and Peugeot, which frankly seemed to me to be inconsistent with what the Supreme Court said in Farrar. Even if you just get nominal damages, you're a prevailing party for purposes of fee-shifting statutes. The question is, what's a reasonable fee? Fisher and Peugeot seem to say, well, if you just settle for nuisance value, you don't really prevail. I don't think that's correct. We ignored what the court said, that this was a nominal and therefore not entitled to any fees. I don't think that was it. No, that's not your position. I'm looking at the case law that's being presented to us, and I see this tangent. You have a bunch of cases like that. The Seventh Circuit case where somebody got, I think one was a dollar, and they said, well, you're not a prevailing party. There was those two in the Fletcher case where they got less than 10%. Keep in mind, in this case, to correct the record, they got about 3%. Remember, they asked for $1,000 for a fair debt count, which we had to admit, it was just whether we had a defense on it. They asked for $21,000 for the fair debt count and the actual damages. They had the FCRA count for the report, and they asked for an additional $5,000 in that. Remember, they got 127th of what they asked for. If you look at those cases, there would probably be a diminished recovery, and the court could have decided the case on that, but the court didn't. What the court said, and what you all alluded to, one, there was a history here. Two, the standing order from this judge and every judge in this courthouse. You file, you guys say, have you discussed settlement? Because when you go in for that first conference, the judge is going to say, especially on an individual fair debt count, is there a demand? Is there an offer? Defendant, no offer, no demand. Have you made an offer at judgment? It just comes up. Judge Cannelli has you in chambers. Judge Castillo has you in chambers. I just was in front of Judge Valdesano. That's what comes up. You know that. That's how it happens. Refusing to comply with the standing order, that was a mistake. Refusing to talk in regards to three really generous offers of judgment, that was a mistake. Going to trial in light of that offer, those are mistakes. What was the violation here? The evidence, which really didn't come through in a breeze, and you don't get the benefit. PRH had deleted its trade line. It was a $695 Chase trade line. What was the evidence? One, Chase's trade line was on the credit report anyhow. Whether this trade line came off or not, it was still going to be on there, and it was on there. At the time of trial, when the transhuman person came in to testify, there were a bunch of other negatives on there. Yes, it was an unfortunate mistake that we explained, but it was not some kind of traumatic event, especially when looking at the evidence. That was a big gamble. Those are big gambles that they lost, and then after the fact, they came up and said, it was all the offers of judgment's fault. That's not what happened. They gambled. I'm not sure why. I don't know why they didn't negotiate, but they went down that path. What you're asked to do is analyze under abuse of discretion two judges' review of this. They looked at these records. They analyzed it correctly, and they did not sit there and say, the offer of judgment cut them off. That's absolutely not how they decided this at all. It was a piece of evidence, but they went through the Lodestar analysis. They went through, was it a complex case, what were the results, and was it of a public interest? None of those factors favored the plaintiff. They favored way against the plaintiff. So unless there's any further questions, Your Honor, thank you very much. Thanks for the judgment to be affirmed. Thank you very much, Mr. Schultz. One minute of rebuttal, Mr. Casalo. Your Honors, a very relevant case is Anacapitina, as I mentioned. That was a case where the district court reduced the fee by one-third. There was a $10 million amount sought. $635,000 was recovered. And ultimately the court found that it was an error. The court reversed because it found that you could not consider that, as the defendant considers that in this case, and as the court considered it, to determine whether or not to cut off fees. In other words, it doesn't matter that $21,000 were sought and only $1,000 was recovered. Ultimately, $1,000 was a victory. And it was a very strong victory under the FDCPA because it was a recovery for maximum damages. And again, a recovery with no temporal cutoff for attorney fees and costs. The problem with the district court's ruling was attorney fees and costs were cut off, objectively. Any reading of that offer that I would convey to my client was that fees were cut off, and you don't get fees, and therefore you may be responsible for fees. Thank you, Counsel. We'll take the case under advisement. The court will be in recess until tomorrow morning.